# IN THE UNITED STATES DISTRICT COURT
# FOR THE NORTHERN DISTRICT OF OKLAHOMA

| | |
|---|---|
| MELISSA J. CRAWFORD, | ) |
|     Plaintiff, | ) |
| v. | ) Case No. 11-cv-233-TLW |
| MICHAEL J. ASTRUE, Commissioner of the Social Security Administration, | ) |
|     Defendant. | ) |

## OPINION AND ORDER

Plaintiff, Melissa J. Crawford, requests judicial review pursuant to 42 U.S.C. § 405(g) of the decision of the Commissioner of the Social Security Administration ("Commissioner") denying plaintiff's applications for disability insurance benefits ("DIB") and supplemental security income ("SSI") under the Social Security Act, 42 U.S.C. §§ 401 *et seq.* In accordance with 28 U.S.C. § 636(c)(1) and (3), the parties have consented to proceed before a United States Magistrate Judge. (Dkt. # 7). Any appeal of this order will be directly to the Tenth Circuit Court of Appeals. Plaintiff appeals the decision of the Administrative Law Judge ("ALJ") and asserts that the Commissioner erred because the ALJ incorrectly determined that plaintiff was not disabled. For the reasons discussed below, the Court **AFFIRMS** the Commissioner's decision.

### Claimant's Background

At the time of the hearing before the ALJ on May 24, 2010, plaintiff was 42 years old. (R. 10, 26). Plaintiff completed high school and worked in various customer service jobs until 2001, the alleged onset year of her disability. (R. 39, 117-22). She was married from 1997 through 2009 and primarily served as a homemaker during this time, staying at home to care for her daughter. (R. 15, 206).

According to plaintiff's testimony, she was first diagnosed with bipolar I disorder in October 1995, and has been treated on and off since that time with antidepressants and antianxiety medications. (R. 26-27). Despite having had no manic outbreaks since 2001, plaintiff claimed to be a "rapid cycler," who can vacillate between a manic and depressive state within thirty minutes. (R. 14-15, 29). Plaintiff attributed her lack of manic episodes and lack of inpatient treatment for several years to her lack of employment, particularly her relief from regular interaction with others as a crucial part of employment. (R. 36-37, 144). She characterized her illness as currently being depressive in nature, especially since her divorce was finalized in 2009. (R. 30). Plaintiff testified that, in her "depressive" state, she suffers from bodily pain, lack of appetite, and lack of motivation. (R. 30-32). She sleeps either excessively or sparingly, does not shower, and turns off the phone. (R. 30-32). She avoids leaving the house, and sometimes remains at home for up to two weeks at a time. (R. 15, 34-36). Within the year prior to her hearing, plaintiff also claimed to be cutting and burning herself. (R. 15, 37-38, 230).

Plaintiff further testified that she has received four inpatient treatments for her illness spanning from 1995 to 2001; however, she has provided no medical records evidencing such hospitalizations. (R. 14-15, 143-44, 172, 175, 177). She began seeing psychiatrist, Dr. Peter Alan Rao, in 2009 around the time of her divorce on an outpatient basis. (R. 15, 28, 170, 172-73). Besides her sessions with Dr. Rao, plaintiff does not appear to have received regular medical treatment since 2001.[1]

The administrative record shows that plaintiff was first seen by Dr. Rao on January 22, 2009, with symptoms of severe depression. (R.172-73). Dr. Rao diagnosed plaintiff with "bipolar

---

[1] The administrative record contains two instances in 2008 when plaintiff received narcotic prescriptions. (R. 171). However, these medications are not tied in any way to Dr. Rao, plaintiff's sole treating physician of record.

I, depr[essed] (manic and psychotic)." (R. 172-73). His notes mention plaintiff's divorce, her family history of mental illness, and that plaintiff was "not the same person" after her antidepressant was decreased in 2001. (R.172-73). Dr. Rao noted that plaintiff had neither suicidal nor homicidal ideation. (R.172-73). His remaining notes focus exclusively on plaintiff's manic and depressive symptoms for purposes of medication management. (R.172-73).

Agency consultant, Minor Gordon, Ph.D., completed a mental status examination of plaintiff on April 1, 2009. (R. 175-77). In his discussion of plaintiff's pertinent history, Dr. Gordon noted that plaintiff was previously seen by Dr. George Blake on an outpatient basis, and was currently being treated for bipolar disorder by Dr. Rao.[2] (R. 175-76).

Dr. Gordon noted that plaintiff was cleanly and neatly groomed but seemed depressed, her facial expression being one of sadness. (R. 176). Plaintiff's manner and attitude appeared generally appropriate, with an average level of intelligence. Id. Both short and long term memory were tested and deemed normal. (R. 176-77). Plaintiff's social-adaptive behavior seemed normal as well, as Dr. Gordon remarked that plaintiff "could pass judgment in a work situation, communicate comfortably in a social circumstance, avoid common danger and maintain her own personal hygiene." (R. 176). Plaintiff also appeared oriented as to time, person, and place. Id. Dr. Gordon concluded that plaintiff's daily activities were less than normal. (R. 177). He diagnosed plaintiff with "bipolar disorder, most recent episode depressed, in marginal to fair remission" on

---

[2] While plaintiff testified to four inpatient hospitalizations at her hearing, Dr. Gordon's psychiatric evaluation mentioned only three: one in 1995, one in 1997, and one in 2001. (R. 175). Dr. Gordon also noted plaintiff's earlier psychiatric history as a patient of Dr. Blake. Id. Dr. Gordon's evaluation appears to be the only point in the record which references any concrete treatment between 2001 and 2009.

Axis I[3] and deferred any diagnosis on Axis III. Id. Plaintiff's global assessment of functioning ("GAF")[4] was assessed at 65, indicating some mild depressive symptoms and some difficulty in social functioning, but indicating that overall she was functioning relatively well and had some meaningful relationships. Id.

Nonexamining agency consultant, Deborah Hartley, Ph.D., completed a psychiatric review of plaintiff on April 28, 2009. (R. 179-91). Dr. Hartley opined that a Residual Functional Capacity ("RFC") assessment would be necessary, based on her finding that plaintiff suffered from a category 12.04 affective disorder. (R. 179). Dr. Hartley indicated plaintiff had "Bipolar syndrome with a history of episodic periods manifested by the full symptomatic picture of both manic and depressive symptoms (and currently characterized by either or both syndromes)." (R. 182). For the "Paragraph B criteria,"[5] Dr. Hartley assessed plaintiff with a moderate degree of restriction in activities of daily living, in social functioning, and in concentration, persistence or pace, with insufficient evidence to adjudge episodes of decompensation.[6] (R. 189). In the

---

[3] The multiaxial system "facilitates comprehensive and systematic evaluation." American Psychiatric Association, Diagnostic and Statistical Manual of Mental Disorders 27 (Text Revision 4th ed. 2000).

[4] The GAF is a subjective determination based on a scale of 100 to 1 of "the clinician's judgment of the individual's overall level of functioning." Langley v. Barnhart, 373 F.3d 1116, 1122 n.3 (10th Cir. 2004), (quoting American Psychiatric Association, Diagnostic and Statistical Manual of Mental Disorders 32 (Text Revision 4th ed. 2000)).

[5] The "Paragraph B Criteria" in the Listing of Impairments establishes broad categories used to assess the severity of a mental impairment. The four categories are (1) restriction of activities of daily living, (2) difficulties in maintaining social functioning, (3) difficulties in maintaining concentration, persistence or pace, and (4) episodes of decompensation, each of extended duration. Social Security Ruling ("SSR") 96-8p; 20 C.F.R. Part 404 Subpt P, App. 1 ("Listings") § 12.00C. See also Carpenter v. Astrue, 537 F.3d 1264, 1268-9 (10th Cir. 2008).

[6] An episode of decompensation is defined as "exacerbation or temporary increases in symptoms or signs accompanied by a loss of adaptive functioning, as manifested by difficulties in performing activities of daily living, maintaining social relationships, or maintaining concentration, persistence, or pace." Listed Impairments 12.00(C)(4). The episodes are of extended duration when they last at least two weeks. Id.

"Consultant's Notes" portion of the form, Dr. Hartley summarized plaintiff's history as well as the Mental Status Examination completed by Dr. Gordon. (R. 191). Dr. Hartley concluded:

> She is able to perform personal care, prepare meals, do housework, drive, shop and manage finances. She reports she does not like to go out alone. She reports memory and concentration problems. ADLs [activities of daily living] are moderately limited due to mental allegations.

(R. 191).

Dr. Hartley also completed a Mental Residual Functional Capacity ("RFC") Assessment form. (R. 193-95). Plaintiff was not deemed significantly limited in most areas of understanding and memory, nor was plaintiff deemed significantly limited in most areas of sustained concentration and persistence. (R. 193-94). The only area with marked limitation was plaintiff's capacity to understand and remember, as well as carry out, detailed instructions. Id. Moreover, besides being markedly limited in her capacity to interact appropriately with the general public, plaintiff was not considered significantly limited in social interaction. (R. 194). Dr. Hartley further found no significant limitations in adaptation. Id. Dr. Hartley concluded that plaintiff was capable of performing simple tasks with routine supervision. (R. 195). While plaintiff could not relate to the general public, she could relate to supervisors and peers on a superficial work basis, and adapt to a work situation. Id. Medical consultant, Paul Cherry, Ph.D., concurred with Dr. Hartley's psychiatric review as well as Dr. Hartley's RFC assessment. (R. 197-201).

Dr. Rao completed a Mental Status Form on plaintiff on July 16, 2009. (R. 203). On this form, Dr. Rao characterized plaintiff's demeanor as distraught and agitated. Id. He stated that plaintiff's mental status evinced a sad mood and fragile affect, but her thought processes were goal-oriented. Id. Dr. Rao characterized plaintiff as suffering from depression, apathy, lack of

energy, and anhedonia.[7] Id. Dr. Rao also mentioned that plaintiff became psychotic and delusional when manic.[8] Id. He described her daily routine as limited to caring for her seventeen year-old daughter. Id. Dr. Rao recommended plaintiff stay on psychiatric medication and receive psychotherapy and reported a fair future prognosis for improvement in her condition. Id. He diagnosed plaintiff with bipolar I disorder (manic-depressive with psychosis). Id. Dr. Rao concluded that plaintiff could respond to simple instructions on an independent basis, but ambiguously opined that she could "not now" respond to work pressure, supervision, and coworkers. Id.

The administrative record shows that plaintiff continued to see Dr. Rao through April 27, 2010. (R. 230-31). A February 2, 2010, progress note mentioned that plaintiff had repeatedly failed to follow Dr. Rao's advice and undergo blood testing for vitamin levels to assess plaintiff's physical health. (R. 225). Additionally, two progress notes, dated March 23, 2009 and November 10, 2009, advise plaintiff to begin taking Abilify to manage her symptoms. (R. 207, 222). However, plaintiff failed to follow Dr. Rao's recommendation to start Abilify due to cost and lack of insurance, and the record does not indicate that plaintiff made any effort to obtain Abilify at a lower cost.[9] (R. 207, 222). During plaintiff's last documented session, dated April 27, 2010, plaintiff showed Dr. Rao her left forearm, which bore evidence of multiple cuttings

---

[7] Anhedonia is defined as the "absence of pleasure from the performance of acts that would normally be pleasurable." The American Heritage Stedman's Medical Dictionary (Houghton Mifflin Company 2002).

[8] This reference to plaintiff's manic symptoms appears to be based exclusively on plaintiff's testimony. Plaintiff herself reported no manic episodes since 2001, and she had only been seeing Dr. Rao since 2009.

[9] Although neither the ALJ nor the Commissioner raise this issue, plaintiff's failure to follow her treating physician's recommendation could serve as an alternative basis for denial of benefits. Graham v. Sullivan, 794 F.Supp. 1045, 1053 (D. Kan. 1992) (acknowledging that failure to follow a physician's treatment recommendation(s) is a legitimate basis for denial of benefits).

and recent burnings: "She says cutting her arm felt very soothing to her, she felt a balloon that was an outburst was let out."[10] (R. 230). Dr. Rao's remaining progress notes focus primarily on medication management, with brief references to plaintiff's depressive symptoms, her divorce, and her lack of familial support. (R. 172, 203-11, 215-31).

Dr. Rao also completed a Medical Source Statement – Mental form dated May 21, 2010. (R. 213-14). He assessed plaintiff's ability to understand and remember detailed instructions as markedly impaired. (R. 213). He rated plaintiff's capacity to carry out detailed instructions, to maintain attention and concentration for extended periods, and to perform activities within a schedule, while maintaining regular attendance and being punctual within customary tolerances, as moderately impaired. Id. Dr. Rao rated as markedly impaired plaintiff's capacity to work in coordination with or proximity to others without being distracted, along with her capacity to complete a normal workweek without interruptions from psychological symptoms, and to perform at a consistent pace without an unreasonable number and length of rest periods. (R. 214). Besides being mildly impaired in asking simple questions or for help, and in maintaining socially appropriate behavior while adhering to basic standards of cleanliness and neatness, plaintiff's social interactional skills were assessed as being markedly impaired. Id. In terms of adaptive skills, Dr. Rao assessed as markedly impaired plaintiff's capacity to set realistic goals independent of help from others. Id. Dr. Rao did not comment on his assessment. Id.

**Procedural History**

Plaintiff protectively applied for both Title II and Title XVI benefits on February 4, 2009. (R. 10). The Commissioner denied plaintiff's applications initially on April 23, 2009, and on

---

[10] This one brief reference in Dr. Rao's progress notes is worth mention because the Commissioner failed to identify it. In fact, as noted in plaintiff's brief, the Commissioner's report stated that "There is no mention of cutting herself or burning herself in Dr. Rao's treatment records." (R. 15).

7

reconsideration on October 1, 2009. (R. 10, 45-57, 60-64). Plaintiff filed a request for hearing before an Administrative Law Judge ("ALJ") on October 30, 2009. (R. 66-71). The ALJ held a hearing on May 24, 2010, in Tulsa, Oklahoma and, in his July 14, 2010, decision, denied plaintiff's claim for disability. (R. 10-17, 75-85, 102-03). Plaintiff requested review of the ALJ's decision on September 9, 2010. (R. 166-69). In a Notice of Appeals Council Action dated February 16, 2011, the Appeals Council denied plaintiff's request for review. (R. 1-6). Thus, the decision of the ALJ represents the Commissioner's final decision for purposes of this appeal. 20 C.F.R. §§ 404.981, 416.1481.

## Social Security Law and Standard of Review

The Social Security Act defines disability as the "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. § 423(d)(1)(A). In particular, disability is characterized as a physical or mental impairment that "results from anatomical, physiological, or psychological abnormalities which are demonstrated by medically acceptable clinical and laboratory diagnostic techniques" administered by "acceptable medical sources," such as licensed and certified psychologists and physicians. 42 U.S.C. § 423 (d)(3), and 20 C.F.R. §§ 404.1513, 416.913. A claimant is disabled under the Act only if his "physical or mental impairment or impairments are of such severity that he is not only unable to do his previous work but cannot, considering his age, education, and work experience, engage in any other kind of substantial gainful work in the national economy." 42 U.S.C. § 423(d)(2)(A). A claimant for disability benefits bears the burden of proving that he is disabled. 42 U.S.C. § 423(d)(5); 20 C.F.R. §§ 404.1512(a), 416.912(a). To meet this burden, the claimant must provide medical

evidence of a severe impairment during the relevant adjudicated period. 20 C.F.R. §§ 404.1512(b), 416.912(b).

Social Security regulations implement a five-step sequential process to evaluate a disability claim. 20 C.F.R. §404.1520; see also Williams v. Bowen, 844 F.2d 748, 750 (10th Cir. 1988) (detailing steps).[11] "If a determination can be made at any of the steps that a claimant is or is not disabled, evaluation under a subsequent step is not necessary." Id. at 750.

Judicial review of the Commissioner's determination is limited in scope by 42 U.S.C. § 405(g). This Court's review is constrained to two inquiries: first, whether the decision was supported by substantial evidence; and second, whether the correct legal standards were applied. Hamlin v. Barnhart, 365 F.3d 1208, 1214 (10th Cir. 2004) (quotation omitted). Substantial evidence is more than a mere scintilla, less than a preponderance, and is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion. Richardson v. Perales, 402 U.S. 389, 401 (1971) (quoting Consolidated Edison Co. v. NLRB, 305 U.S. 197, 229 (1938)). The Court may neither reweigh the evidence nor substitute its judgment for that of the

---

[11] Step one requires the claimant to establish that he is not engaged is substantial gainful activity, as defined by 20 C.F.R. § 404.1510. Step two requires that the claimant prove he has a medically severe impairment or combination of impairments that significantly limit his ability to do basic work activities. See 20 C.F.R. § 404.1520(c). If the claimant is engaged in substantial gainful activity (step one) or if the claimant's impairment is not medically severe (step two), disability benefits are denied. At step three, the claimant's impairment is compared with certain impairments listed in 20 C.F.R. Pt. 404, Subpt. P, App.1 ("Listings"). A claimant suffering from an impairment or impairments "medically equivalent" to a listed impairment is determined to be disabled without further inquiry. If not, the evaluation proceeds to step four, where the claimant must establish that he does not retain the RFC to perform his past relevant work. If the claimant's step four burden is met, the burden shifts to the Commissioner to establish at step five that work exists in significant numbers in the national economy which the claimant, taking into account his age, education, work experience, and RFC, can perform. See Dikeman v. Halter, 245 F.3d 1182, 1184 (10th Cir. 2001). Disability benefits are denied if the Commissioner shows that the impairment which precluded the performance of past relevant work does not preclude alternative work. 20 C.F.R. § 404.1520.

9

Commissioner. See Casias v. Secretary of Health & Human Service, 933 F.2d 799, 800 (10th Cir. 1991).

**Decision of the Administrative Law Judge**

At step one, the ALJ found that plaintiff had not engaged in substantial gainful activity since January 1, 2001, the alleged onset date. (R. 12). At step two, the ALJ determined that plaintiff has one severe impairment, a bipolar disorder. Id. At step three, the ALJ found that plaintiff's impairment did not meet or medically equal the listed impairment, specifically listing 12.04. Id. While plaintiff had experienced moderate restrictions in concentration, persistence, or pace, activities of daily living, and social functioning, she did not have any episodes of decompensation of extended duration for the relevant period. (R. 13). Because her bipolar disorder did not cause at least two marked limitations or one marked limitation and repeated episodes of decompensation, each of extended duration, the "paragraph B" criteria of category 12.04 were not satisfied. Id.

The ALJ determined that plaintiff had the RFC to do a full range of work at all exertional levels with the following nonexertional limitations: "She can perform simple, repetitive tasks having no more than incidental contact with the public." Id. The ALJ noted plaintiff's testimony that she suffered from bipolar disorder with rapid cycling and could vacillate within a half hour from depressed to manic. (R. 14). Plaintiff also stated that she received medication for her illness and did not leave her house unless absolutely necessary. Id. She referenced four past inpatient treatments, the last in 2001, and testified to recently beginning to cut and burn herself. Id. The ALJ found plaintiff's testimony less than credible:

> Although the claimant alleges disability since 2001, there is no medical evidence prior to January 2009 (Exhibit 1F). On April 21, 2009, the claimant stated that she had not worked in 8 years because she was raising a daughter at home. (Exhibit

> 7F, page 5). On February 2, 2012, the claimant stated that she had not had mania in several years (Exhibit 9F).
> Based on the evidence, the claimant has not been hospitalized for her bipolar disorder since 2001, which *indicates improvement in her condition*. She gets little more than medication refills from Dr. Rao.

(R. 15). [emphasis added]. Considering the lack of evidence between 2001 and 2009, plaintiff's lack of hospitalizations during this period, and plaintiff's homemaker status for the alleged disability period, the ALJ concluded that plaintiff's testimony was not credible. Id.

The ALJ then summarized Dr. Rao's medical records. Id. He concluded that although Dr. Rao assessed plaintiff as having moderate to marked limitations in most areas of mental functioning, Dr. Rao's treatment records failed to indicate such marked limitations, and the majority of his records reflected medication management rather than counseling. Id. Because Dr. Rao's opinion in the mental status form and medical source statement conflicted with his own treatment records, and was inconsistent with other substantial evidence (the fact that plaintiff did not work because she was a homemaker, the fact that plaintiff did not provide any medical records whatsoever to cover the pertinent period prior to 2009, and the fact that plaintiff had not been hospitalized since 2001), the ALJ concluded that Dr. Rao's opinion as a treating physician could not be given controlling weight. Id. The ALJ also implicitly concluded that Dr. Rao's opinion should be given no weight whatsoever in the analysis. Id.

Critically, the ALJ noted that plaintiff's treating physicians did not restrict her daily activities in a manner which would preclude employment. Id. He further characterized the restrictions in plaintiff's life as "self-imposed." Id. The ALJ concurred with three consulting experts, who determined that plaintiff could perform simple tasks entailing minimal contact with the general public, and he concluded that plaintiff had a "reasonable" RFC. Id.

11

At step four, the ALJ found that plaintiff was unable to perform any past relevant work. Id. At step five, the ALJ determined that jobs exist in significant numbers in the national economy that plaintiff could perform, taking into account her age, education, work experience, and RFC. (R. 16). In particular, the vocational expert determined that plaintiff could work in such representative occupations as dishwasher and bench assembler. Id. The ALJ consequently concluded that plaintiff was not disabled. (R. 17).

**Review**

On appeal, plaintiff asserts that the ALJ failed to evaluate the medical evidence properly and erred in his credibility analysis of her testimony. The undersigned finds that substantial evidence supports the ALJ's decision, and the decision complies with legal requirements. Therefore, the ALJ's decision is affirmed.

First, the Court will discuss whether the ALJ applied proper legal standards in altogether rejecting Dr. Rao's opinion that plaintiff had several areas of marked limitation and could "not now" work. Generally, the opinion of a treating physician is given more weight than that of an examining consultant, and the opinion of a nonexamining consultant is given the least weight. Robinson v. Barnhart, 366 F.3d 1078, 1084 (10th Cir. 2004). The ALJ must give a treating physician opinion controlling weight if it is supported by "medically acceptable clinical and laboratory diagnostic techniques," and is consistent with other substantial evidence in the record. Hamlin, 365 F.3d at 1215. See also 20 C.F.R. §§ 404.1527(d)(2), 416.927(d)(2). Even if a treating physician's opinion is not entitled to controlling weight, it is still entitled to deference and must be weighed using the appropriate factors set out in Sections 404.1527 and 404.927. See

Langley v. Barnhart, 373 F.3d 1116, 1119 (10th Cir. 2004).[12] In applying these factors, the ALJ's findings must be "sufficiently specific to make clear to any subsequent reviewers the weight [he] gave to the treating sources medical opinion and the reason for that weight." Id. at 1119. Moreover, when an ALJ decides to disregard a medical report by a claimant's physician, he must set forth specific, legitimate reasons for his decision. See Marshall v. Astrue, 315 Fed.Appx. 757, 759 (10th Cir. 2009) (unpublished)[13] (citing Cowan v. Astrue, 552 F.3d 1182, 1188 (10th Cir. 2008)).

The ALJ did not discuss whether Dr. Rao's opinion was "supported by medically acceptable clinical and laboratory diagnostic techniques." Hamlin, 365 F.3d at 1215. Instead, he exclusively considered the opinion's consistency with other record evidence. (R. 15). The ALJ expressly stated that his analysis was aimed at determining whether Dr. Rao's opinion was entitled to controlling weight. Id. The fact that the ALJ did not discuss the first component does not indicate that he failed to apply proper legal standards, since both components must be met for the opinion to have controlling weight. See Marshall, 315 Fed.Appx. at 759. As the court concluded in Marshall, "we have no reason not to take the ALJ at his word …[, and] [w]e will not require the ALJ to discuss both components if one was not met." Id.

In the instant case, Dr. Rao's medical source statement was clearly inconsistent with other substantial evidence in the record. This statement indicated that plaintiff suffered from

---

[12] These factors are summarized in 20 C.F.R. §§ 404.1527, 416.927 and include: (1) the length of the treatment relationship and the frequency of examination; (2) the nature and extent of the treatment relationship, including the treatment provided and the kind of examination or testing performed; (3) the degree to which the physician's opinion is supported by relevant evidence; (4) consistency between the opinion and the record as a whole; (5) whether or not the physician is a specialist in the area upon which the opinion is rendered; and (6) other factors brought to the ALJ's attention which tend to support or contradict the opinion. See Watkins v. Barnhart, 350 F.3d 1297, 1301 (10th Cir. 2003) (quotation omitted).

[13] Unpublished decisions are not precedential, but may be cited for their persuasive value. See Fed. R. App. 32.1: 10th Cir. R. 32.1.

13

moderate to marked limitations in most areas of mental functioning. (R. 15, 213-14). However, most evidence in the record suggests otherwise. As noted by the ALJ, while plaintiff claimed a disability onset date of January 1, 2001, she also said that she had not worked since 2001 because she stayed at home to raise her daughter. (R. 15, 206). Moreover, she provided no medical records before 2009. (R. 172). Plaintiff herself testified that she had not been hospitalized since 2001, nor had she suffered from a manic episode in several years, which, as the ALJ determined, indicated improvement in her condition. (R. 15, 37). Three medical experts with the State Agency further concluded that plaintiff was capable of performing simple tasks, so long as they entailed minimal contact with the general public. (R. 15, 177, 191, 200).

Dr. Rao's treatment records and mental status form are inconsistent with his medical source statement, which indicates that plaintiff can perform simple tasks. (R. 213-14). Moreover, nowhere in Dr. Rao's medical records did he ever impose any functional restrictions which would preclude work activity; Dr. Rao never advised plaintiff she should not work. (R. 15). The substantive content of Dr. Rao's treatment records suggests medication management as opposed to counseling, which further detracts from his opinion and weighs against that opinion receiving deference, must less controlling weight. Dr. Rao's ambiguous statement that plaintiff could "not now" work does not merit controlling weight or deference, considering the marked inconsistencies between this statement and other substantial evidence in the record, including Dr. Rao's own treatment records, all of which the ALJ noted.[14]

Although the best practice would have been for the ALJ to address the first component of the controlling-weight analysis, the ALJ's unclear reasoning is harmless in light of the fact that

---

[14] The fact that the ALJ erroneously stated that Dr. Rao's treatment records did not reference plaintiff's instances of cutting and burning, when they actually did in one brief section, is worth mention. However, this omission is not dispositive, considering the weight of the evidence supporting the ALJ's decision.

no reasonable fact finder could conclude that Dr. Rao's opinion was supported by medically acceptable clinical and laboratory diagnostic techniques. See Marshall, 315 Fed.Appx. at 759-60.

As her next issue of error, plaintiff claims that the ALJ failed to perform a proper credibility determination. Credibility determinations are peculiarly the province of the finder of fact, and as such are given great deference. See Hamilton v. Secretary of Health & Human Services, 961 F.2d 1495, 1499 (10th Cir. 1992). As noted by the court in White v. Barnhart, 287 F.3d 903, 910 (10th Cir. 2001):

> The ALJ enjoys an institutional advantage in making [credibility determinations]. Not only does an ALJ see far more social security cases than do appellate judges, [the ALJ] is uniquely able to observe the demeanor and gauge the physical abilities of the claimant in a direct and unmediated fashion.

In evaluating credibility, an ALJ must provide specific reasons that are closely linked to substantial evidence. See Kepler v. Chater, 68 F.3d 387 (10th Cir. 1995); SSR 96-7p, 1996 WL 374186.

In Kepler, the Tenth Circuit held that the ALJ's credibility assessment was insufficient, because the ALJ simply recited the general factors he considered and then stated that the plaintiff was not credible based on those factors. The court explained that the ALJ must refer to specific evidence on which he relies in determining credibility and link his credibility findings to such specific evidence. Id. at 391. Subsequently, in Qualls v. Apfel, 206 F.3d 1368 (10th Cir. 2000), the court clarified that its "opinion in Kepler does not require a formalistic factor-by-factor recitation of the evidence. So long as the ALJ sets forth the specific evidence he relies on in evaluating a claimant's credibility, the dictates of Kepler are satisfied." Id. at 1372.

Here, the ALJ linked his credibility findings to specific evidence in the record. Again, while plaintiff alleges disability since 2001, she provided no medical evidence prior to January 2009, and also stated that she had not worked since 2001 because she raised her daughter at

15

home. (R. 15, 206). The ALJ cited this evidence. In addition, while plaintiff testified that she is bipolar with rapid cycling, and can cycle from depressed to manic within a matter of thirty minutes, the ALJ noted that plaintiff had not experienced a manic episode in several years. (R. 15, 211). Although plaintiff stated she was hospitalized four times for her bipolar disorder, she has not been hospitalized since 2001, which, as the ALJ noted, indicates improvement in her condition. (R. 15, 37). Additionally, plaintiff's testimony that Dr. Rao told her she would probably never be able to work again is contradicted by Dr. Rao's treatment records, on which the ALJ relied:

> The Administrative Law Judge does not discount all of the claimant's complaints. However, the claimant's treating physicians did not place any functional restrictions on her activities that would preclude work activity with the previously mentioned restrictions. The claimant's daily activities appear restricted, but these restrictions are self-imposed. There is no evidence that Dr. Rao has advised the claimant to do nothing all day. Given the objective medical evidence in the record the Administrative Law Judge finds that the claimant could function within those limitations without experiencing significant exacerbation of her symptoms.

(R. 15, 36-7). Here, the ALJ complied with the standard set forth in Kepler, as clarified by Qualls.

Thus, the evidence relied upon by the ALJ to support his credibility finding is both specific and substantial. Plaintiff has cited no conclusive medical evidence which contradicts the ALJ's assessment of her credibility, and her argument addresses the weight rather than the sufficiency of the evidence. Plaintiff would like this Court to give more weight to the evidence that is in her favor and less weight to the evidence that is not. The Court is not allowed to do so:

> The possibility of drawing two inconsistent conclusions from the evidence does not prevent an administrative agency's findings from being supported by substantial evidence. We may not displace the agency's choice between two fairly conflicting views, even though the court would have justifiably made a different choice had the matter been before it *de novo*.

Lax v. Astrue, 489 F.3d 1080, 1084 (10th Cir. 2007) (citations, quotations and brackets omitted).

Therefore, the Court finds that the ALJ linked his credibility determination to specific supporting evidence. He thoroughly explained his credibility determination, citing inconsistencies between plaintiff's testimony, statements from others, including Dr. Rao, and plaintiff's own prior statements.

**Conclusion**

Based on the foregoing, the Court finds that the ALJ's decision is supported by substantial evidence and that the correct legal standards were applied. Therefore, the Court AFFIRMS the decision of the Commissioner denying disability benefits to plaintiff.

SO ORDERED this 30th day of May, 2012.

T. Lane Wilson
United States Magistrate Judge